UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KAY KHINE
924 G Street NW
Washington DC 20001

and

CATHOLIC CHARITIES
924 G Street NW
Washington DC 20001


Plaintiffs

v.                                                          Civil Action No.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY
20 Massachusetts Avenue, NW
Washington DC 20528

Defendant

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Introduction

1.This is a Freedom of Information Act [FOIA] case. Plaintiff Catholic Charities made a "third party" request for a specific document concerning Plaintiff Khine. The Department of Homeland Security ["DHS"] did not disclose the document, and did not state whether the document was, or was not, in its possession.

2. The DHS did not provide the real reason why it did not disclose the document; instead it provided a laundry list of over ten reasons, none of which apply to the document. The DHS did not explain why nothing could be segregated out of the document.

1

3. The DHS invited plaintiff "to file an administrative appeal," but under these circumstances, such an appeal is futile and illusory. Plaintiff does not know what to argue in such an appeal.  Such an appeal is almost certainly likely to result in nothing of value.

4. Therefore, plaintiffs request this Court to declare the initial response of DHS to be in violation of the FOIA.

## Jurisdiction and Venue

5. This court has subject matter jurisdiction over this action pursuant to 5 U.S.C. § 552(a) (4) (B), and 28 U.S.C. § 1331. This court has jurisdiction to grant declaratory and further necessary or proper relief pursuant to 28 U.S.C. §§2201-2202 and Federal Rules of Civil Procedure 57 and 65.

6. Venue in this district is proper under 5 U.S.C. § 552(a) (4) (B) and 28 U.S.C. § 1391(c) because defendant is in the District of Columbia.

## The parties

7. Plaintiff Catholic Charities made a "third party" request for a document, on behalf of plaintiff Khine.

8. Plaintiff Khine is a FOIA requester who has not been provided with a document concerning herself.

9. Catholic Charities has made many similar FOIA requests in the past; it has many such requests now pending; and it will make such requests in the future.

10. Defendant DHS is a department of the executive branch of the United States government and is an agency within the meaning of 5 U.S.C. § 552(f).  DHS is responsible for enforcing federal immigration laws.  DHS has possession and control over the documents sought by plaintiffs.

FIRST CAUSE OF ACTION: PLAINTIFF KHINE'S RIGHT TO BE TOLD WHETHER THE AGENCY HAS THE DOCUMENT

11. Plaintiff Kay Khine repeats, alleges and incorporates the allegations of the above paragraphs as if fully set forth herein.

12. Plaintiff was born in Burma in 1978. She came to the United States, applied for asylum, and was interviewed by an asylum officer. The officer wrote an Assessment of the case; the Supervisory Asylum Officer approved and initialed it; the Assessment was placed in plaintiff's file. The Assessment is in the file today.

13. The assessment is three pages long.

14. The assessment is less than eight pages long.

15. Catholic Charities and plaintiff Khine made a FOIA request in February 2017, asking for the Assessment written by the asylum officer, along with other documents. *See* Exhibit 1, attached hereto.

16. The initial response of the DHS to that request was a letter dated July 12, 2017, along with several pages in a disc. *See* Exhibit 2, attached hereto.

17. The July 12, 2017 letter, the "initial response" of DHS, does not contain the word "assessment." The initial response does not state whether the DHS has, or ever had, the assessment.

18. The DHS FOIA processor has plaintiff's file in his hands! He has the request of plaintiff, who is asking for a specific document. It is easy for the processor to state in the initial response: "You have requested the assessment. It is in your file, but it is exempt because…."

19. Along with the initial response, the DHS released 849 entire pages, but did not release the assessment of the asylum officer.

20. The DHS is withholding the entire assessment from plaintiff.

21. The above acts and omissions of DHS violate 5 U.S.C. § 552(a)(6)(A)(i).

EXHAUSTION OF ADMINISTRATIVE REMEDIES

22. There are no administrative remedies to exhaust, because plaintiff is challenging the initial response of the agency, not its final response. If plaintiff had filed an administrative appeal, she would have destroyed her standing to challenge the initial response.

23 In the alternative, because of the agency's actions, plaintiff has constructively exhausted her administrative remedies.

24. If the agency is required to re-write its initial response, correcting and improving it as per plaintiff's complaint and criticisms, it is possible the agency will disclose the assessment, or parts of it, to plaintiff.

25. If the agency re-writes its initial response, correcting and improving it as per plaintiff's suggestions and criticisms, plaintiff will then file a targeted and cogent appeal. Such an appeal could result in more disclosures, a more complete factual record, a correction or re-thinking of policies or a settlement. In that event, judicial review could be completely unnecessary.

SECOND CAUSE OF ACTION: PLAINTIFF'S RIGHT TO BE TOLD THE REAL REASON WHY THE ASSESSMENT WAS WITHHELD

26. Plaintiff Khine repeats, alleges and incorporates the allegations of all the above paragraphs if fully set forth herein.

27. The initial response of DHS contains words, phrases, and references to sections of laws that have *nothing* to do with the assessment requested by plaintiff, such as

Exemption (d)(5) of the PA
Exemption (j)(2)
Exemption (k)(2) of the PA
Exemption (b)(7) (C) of the FOIA
Exhibit (k)(2) of the PA
Exemption (b)(7) (E) of the FOIA

28. Plaintiff did not make a request under the "PA."

29. The initial response states that "documents or other memoranda prepared in contemplation of litigation" are exempt from disclosure.

30. The assessment was not prepared in contemplation of litigation.

31. The initial response states that "confidential communications between attorney and client" are exempt from disclosure.

32. The assessment is not a confidential communication between attorney and client.

33. The initial response does *not* state that an assessment is protected by the deliberative process privilege.

34. The DHS will soon assert that it believes the real and only reason why plaintiff was not given the assessment was because of "the deliberative process privilege."

35. The DHS could have told plaintiff that belief, in its initial response. It would have been very easy to have done so.

36. Plaintiff should have been informed of that belief in the initial response.

37. Plaintiff was confused by the initial response of DHS.

38. The above acts and omissions of DHS violate 5 U.S.C. § 552(a)(6)(A)(i).

THIRD CAUSE OF ACTION: PLAINTIFF'S RIGHT TO BE TOLD WHY NOTHING CAN BE SEGREGATED OUT OF AN ASSESSMENT

39. Plaintiff Khine repeats, alleges and incorporates the allegations of all the above paragraphs as if fully set forth herein.

40. Plaintiff requested a specific document: the assessment. The initial response does not tell why nothing can be segregated out of this specific document. The FOIA requires the agency to tell the requester, with facts and reasons, why nothing can be segregated out of, a specific document, desired by the requester.

41. If DHS believes that only isolated phrases and words could be segregated out, at great expense to the agency, resulting in scattered words of no value to the requester, the DHS should say so in its initial response.  FOIA processors are instructed that this is the *only* reason why nothing is segregated out of a document.

42. DHS FOIA processors are presently, and have been for the past six years, instructed in writing as follows:

> "A processor should segregate information that is exempt (cannot be released) from information that is non-exempt (can be released) …..One exception to this rule is where the non-exempt material is inextricably intertwined with the exempt material and the only information being released are words and/or phrases that do not make sense. *"Inextricably intertwined"* is a term used by the courts to describes material, which, if redacted, would make no sense at all."

43. Because of the acts of DHS as outlined above, the agency has violated 5 U.S.C. § 552(a)(6)(A)(i).

FOURTH CAUSE OF ACTION: PLAINTIFF'S RIGHT TO BE TOLD WHAT DOCUMENTS WERE WITHHELD IN FULL

44. Plaintiff Khine repeats, alleges and incorporates the allegations of all the above paragraphs if fully set forth herein.

45. The initial response of DHS states that "8 pages" are withheld in full. DHS knows what these pages are, since the processor is holding them in his hand. Plaintiff does not know what these pages are. It is very easy for DHS to tell the requester what the withheld pages are.

46. Because of the acts of DHS as outlined above, the agency has violated 5 U.S.C. § 552(a)(6)(A)(i).

FIFTH CAUSE OF ACTION: PLAINTIFF'S RIGHT TO BE TOLD WHAT DOCUMENTS WERE SENT TO ICE

47. Plaintiff Khine repeats, alleges and incorporates the allegations of all the above paragraphs if fully set forth herein.

48. The initial response of DHS states: "3 pages" were sent to ICE. The processor is holding those pages in his hand! He knows that the pages are. He could easily inform the requester what the pages are.

49. Plaintiff does not know what pages were sent to ICE. Plaintiff does not know if the assessment was sent to ICE.

50. Because of the acts of DHS as outlined above, the agency has violated 5 U.S.C. § 552(a)(6)(A)(i).

SIXTH CAUSE OF ACTION: PLAINTIFF'S RIGHT NOT BE CONFUSED AND MISINFORMED ABOUT LAWS AND REASONS WHICH DO NOT APPLY TO PLAINTIFF

51. Plaintiff Khine repeats, alleges and incorporates the allegations of all the above paragraphs as if fully set forth herein.

52. Plaintiff requested a specific document: the assessment. The initial response of DHS suggests that several sections of law, and reasons, apply, concerning the specific document. The FOIA requires the agency to not confuse and mis-inform the requester about anything.

53. Because of the acts of DHS as outlined above, the agency has violated 5 U.S.C. § 552(a)(6)(A)(i).

SEVENTH CAUSE OF ACTION: PLAINTIFF'S RIGHT TO BE INFORMED OF AN AGENCY CLAIM OF HARM IF A DOCUMENT IS DISCLOSED

54. Plaintiff Khine repeats, alleges and incorporates the allegations of all the above paragraphs as if fully set forth herein.

55. Plaintiff requested a specific document: the assessment. The initial response of DHS does not claim the disclosure of this document would harm any interest of the DHS.

56. Because of the acts of DHS as outlined above, the agency has violated 5 U.S.C. § 552(a)(8)(A)(i)(I).

EIGHTH CAUSE OF ACTION: PLAINTIFF'S RIGHT TO BE AFFORDED A MEANINGFUL ADMINISTRATIVE APPEAL

57. Plaintiff Khine repeats, alleges and incorporates the allegations of all the above paragraphs as if fully set forth herein.

58. Plaintiff requested a specific document: the assessment. The initial response of DHS lacks information required by the FOIA, and includes information prohibited by the FOIA. Therefore, plaintiff cannot make a meaningful appeal.

59. Because of the acts of DHS as outlined above, the agency has violated 5 U.S.C. § 552(a)(6)(A)(i), which includes "the right" of a requester to make an appeal.

60. If the agency is required to re-write its initial response, correcting and improving it as per plaintiff's suggestions and criticisms, it is possible the agency will disclose the assessment, or parts of it, to plaintiff.

61. If the agency re-writes its initial response, correcting and improving it as per plaintiff's suggestions and criticisms, plaintiff will then file a targeted and cogent appeal. Such an appeal could result in more disclosures, a more complete factual record, a correction or re-thinking of policies or a settlement. In that event, judicial review could be completely unnecessary.

.<u>NINTH CAUSE OF ACTION: CATHOLIC CHARITIES' RIGHTS UNDER THE FOIA</u>

62. Plaintiff Catholic Charities repeats and realleges all of the above paragraphs, as if fully re-written herein.

63. Catholic Charities is part of the Archdiocese of Washington. Catholic Charities is a non-profit religious institution. It has represented asylum applicants for decades, and will continue to represent them for decades to come. It wants all its clients to see justice. It wants its clients to see justice under the FOIA.

64. It wants to know what asylum officers are doing and thinking. When do they grant asylum; when do they reject? What theories, facts, and authorities are important to them? Notes and assessments of asylum officers give insight into what they feel is important and persuasive. The more that Catholic Charities knows about asylum officers, the better it can advise applicants and other lawyers.

65. It regularly conducts trainings and seminars for lawyers representing asylum applicants. Lawyers at Catholic Charities are members of other organizations, such as the American Immigration Lawyers Association [AILA] and the DC Bar Association, and are invited from time to time to speak at conferences on asylum. Its lawyers write articles for ILW.com, Bender's Immigration Bulletin, and AILA; they attend public meetings at local asylum offices and at Headquarters, where they advocate for justice.

66. Catholic Charities wants to:

- assist other lawyers, as they seek to obtain justice for their clients;

-monitor and examine the work of asylum officers, to ensure that all asylum applicants obtain justice; are the officers doing their job properly? Are their training and internal quality control mechanisms sufficient?

- to assist Congress and the advocacy community in the implementation and improvement of the asylum system;

-to increase public awareness and to facilitate public oversight of the asylum system;

- to preserve the integrity of immigration court and asylum office proceedings;

-continue to submit future FOIA requests and thus will be harmed if the agency continues to violate the FOIA.

67. Catholic Charities has pending FOIA requests. It is in the business of frequently filing FOIA requests. It wants to conduct research, do litigation, and advocacy.

68. The DHS has adopted, endorsed, or implemented a policy or practice that constitutes an ongoing failure to abide by the terms of the FOIA;

69. Catholic Charities will suffer continuing injury due to this practice.

70. Catholic Charities relies heavily upon FOIA to conduct work that is essential

to the performance of its primary institutional activities.

71. Catholic Charities wants to monitor and examine the work of asylum officers, to ensure that all asylum applicants obtain justice, to ensure that the officers are doing their job properly, that their training and internal quality control mechanisms are sufficient. Catholic Charities wants to assist Congress and the advocacy community in the implementation and improvement of the asylum system; it wants to increase public awareness and to facilitate public oversight of the asylum system; and it wants to preserve the integrity of immigration court and asylum office proceedings.

72. Catholic Charities is being injured by the above policies, practices, and acts of the defendant. Its ability to effectuate its above-stated goals is being adversely affected. It relies heavily and frequently on FOIA to conduct work that is essential to the performance of certain of their primary institutional activities. The acts of defendant hinder and prejudice this plaintiff in achieving its goals.

73.. Defendant has violated the FOIA, 5 U.S.C. § 552 in the several ways as indicated above.

POLICY OR PRACTICE ALLEGATIONS

74. From September 2011 to the present, the DHS has provided "initial responses" to FOIA requesters which violate the FOIA in the several ways as identified above in the complaint. These acts of DHS are a "policy or practice."  This policy or practice is uniform; it is a blanket policy or practice. There is a probability that this illegal conduct will recur in the future. It will continue during the pendency of this lawsuit.

75. During the past six years, Jill A. Eggleston has been the director of the DHS unit in charge of responding to FOIA requests from asylum applicants. She instructs her

employees to follow written rules. She instructs her employees to use computer-generated letters to requesters. These letters follow a template.

76. During the past six years, more than 100 asylum applicants have requested their assessments in the FOIA process. Ms. Eggleston has sent an initial response to all of these requesters. Each initial response violates the FOIA as stated above.

77.. For the past 20 years, defendant has been providing immigration judges copies of *entire* assessments, from time to time.

78. For the past 20 years, defendant has argued to immigration courts and to federal appellate courts that *entire* assessments should be considered by the court, because an assessment is a reliable and trustworthy document, and because an assessment can be probative evidence showing that the claim of an asylum applicant should be denied.

## CLASS ACTION ALLEGATIONS

79. Plaintiffs repeat, allege and incorporate the allegations contained in all paragraphs set forth above.

80. This action is brought by the named plaintiffs on their own behalf and on behalf of the class of all other similarly situated individuals under the provisions of Fed. R. Civ. P. 23(a) and (b).

81. The class so represented by the above-named Plaintiffs consists of all persons who, since September 2011, have made, or will make during the pendency of this lawsuit, a FOIA request for the Assessment of their asylum officer, but were provided an initial response similar to plaintiff Khine.

82. The exact number of members of the class, as hereinabove identified and described, is not known, but it is reasonable to believe the class is so numerous that joinder of individual members is impracticable.  The class meets the requirements of Fed. R. Civ. P. 23(a)(1). More than 100 individuals are members of this class. Very few of the class members have English as their native language. The class members are dispersed throughout the United States.

83. The relief sought is common to the entire class, and there are common questions of law and fact that relate to and affect the rights of each member of the class. These common questions include and involve whether the initial response of DHS violates the FOIA because it does not give the real reason for not disclosing it. Other common questions are set forth in the complaint. Another common question is whether the agency's continued policy and/or pattern and practice of issuing initial responses as outlined above is unlawful.  The class meets the requirements of Fed. R. Civ. P. 23(a)(2).

84. The claims of the named plaintiffs are typical of the claims of the proposed class: the plaintiffs have been provided with a computer-generated letter signed by the same person.

85. The class meets the requirements of Fed. R. Civ. P. 23(a)(3).

86. The representative parties will fairly and adequately protect the interests of the class. All requirements of Fed. R. Civ. P. 23 (a)(4) have been met. The named plaintiffs seek the same relief as is sought by the class members. The named plaintiffs have no interests adverse to other class members. Counsel for plaintiffs has the skills and experience necessary to litigate this case.

87. Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.  Defendant has a policy and practice of providing defective computer-generated, initial responses to FOIA requesters. Defendant has a policy and practice of not attempting to respond in accordance with law. All requirements of Fed. R. Civ. P. 23(b)(2) have been met.

88. Questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  All requirements of Fed. R. Civ. P. 23(b)(3) have been met.

   WHEREFORE, plaintiffs request that judgment be entered in their favor
   against defendant and that the court:

a) Order defendant to re-write its initial response in accordance with law;
b) Declare that defendant's initial response violates the FOIA;
c) Enjoin defendant from issuing such a letter in the future; order the agency to correctly instruct and train its FOIA processors;
d) Award plaintiffs reasonable attorney fees and costs pursuant to 5 U.S. C. §552(a) (4) (E) and 28 U.S.C. § 2412; and
e) Grant all other such relief as the Court deems proper and equitable.


   Respectfully submitted,

   Attorney for Plaintiffs

   David L. Cleveland
   DC Bar # 424209
   Catholic Charities of Washington
   924 G Street, NW
   Washington, DC 20001
   [202] 772-4345 Fax: [202] 386-7032
   1949.david@gmail.com