**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

KAY KHINE, et al.,

Plaintiffs

v.                                        Civil Action No.  17-cv-1924 [RC]

U.S. DEPARTMENT OF
HOMELAND SECURITY

Defendant

## PLAINTIFFS' OPPOSITION TO DHS MOTION TO DISMISS

The DHS filed a "Motion to Dismiss Claims" [ECF # 11].  Plaintiffs now file this
Opposition.

### Summary of plaintiffs' arguments

If plaintiffs had filed an administrative appeal, they would have destroyed their standing
to challenge the initial response of DHS. The initial response of the agency violates the FOIA in
many ways; this Court indeed has the jurisdiction and duty to review this agency action.

Four courts have held that parts of an asylum officer Assessment are segregable.
Nonetheless, the DHS continues to send initial responses to FOIA requesters that say "no"
portion is segregable. The DHS does not give any reasons why it ignores the four courts. This
shows bad faith by DHS.

The DHS does not even mention the claims of Catholic Charities, the class action
allegations, nor the policy or practice claims.

### The agency has the burden of proof to justify its action.

Under the FOIA, "the underlying facts are viewed in the light most favorable to the [FOIA]
requester." *Weisberg v. DOJ,* 705 F.2d 1344, 1350 (D.C. Cir. 1983).  The agency bears the ultimate

burden of proof. *Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 142 n. 3 (1989). Unlike the review

of other agency action, the FOIA "expressly places the burden on the agency to sustain its action."

*Dep't of Justice v. Reporters Comm. For Freedom of the Press,* 489 U.S. 749, 755 (1989).

**Civil Rules 12(b)(1) and 12(b)(6) do not mandate dismissal of the complaint.**

The DHS cites Rules 12(b)(1) and (b)(6), but does not explain how they relate to this case.

Neither rule mandates dismissal of the complaint. *Campaign for Accountability v. U.S. Dep't of

Justice,* 2017 WL 4480 828 (D.D.C. 2017).

**There is no administrative remedy that plaintiffs need to exhaust.**

The FOIA provides administrative remedies for some things, but not for others. If a

requester wants the release of documents, but the agency refuses, the requester may make an

administrative appeal, as per section 552(a)(6)(A)(i). Plaintiffs do not now seek the release of

documents; they seek something else. Plaintiffs bring this case as a class action, seeking to

protect the interests of persons who mostly will never file lawsuits.

Section 552(a)(1) requires the agency to publish certain information in the Federal

Register. No administrative remedy is set forth concerning this duty.

Section 552(a)(2) requires publication of some items in electronic format. This is known

as the "reading-room provision." *C.R.E.W. v. U.S. Dep't of Justice,* 846 F.3d 1235, 1240

(D.C.Cir. 2017). "Equally certain under our case law, a plaintiff may bring an action under FOIA

to enforce the reading-room provision, and may do so without first making a request for specific

records under section 552(a)(3)." *Id.* There is no administrative remedy set forth in section

552(a)(2). A plaintiff may bring an action directly in district court. The Court held that "we have

little trouble concluding that a district court possesses authority to grant [some relief under section 552(a)(2)]." 846 F.3d at 1242

Section 552(a)(4) requires regulations to provide for what fees may be charged.    No administrative remedy is set forth.

Section 552(a)(6)(B)(ii) requires the agency to provide the requester, in some circumstances, "an opportunity to limit the scope of the request," and the agency "shall make available its FOIA Public Liaison" in some circumstances. No administrative remedy is set forth for this.

Section 552(a)(6)(E) requires the agency to promulgate regulations concerning "expedited processing." No administrative remedy is set forth concerning expedited processing.

Section 552(a)(6)(E)(iv) provides:

"A district court of the United States shall not have jurisdiction to review an agency denial of expedited processing of a request for records after the agency has provided a complete response to the request."

Thus, the FOIA expressly sets forth a situation where a district court does NOT have jurisdiction. This shows that Congress knows how to limit jurisdiction, when it wants to. Congress did not limit jurisdiction in the issue presented in the instant case: when the requester challenges the initial response of the agency. Nor did Congress provide an administrative remedy concerning a defective initial response.

**A failure to exhaust administrative remedies is not a jurisdictional bar to review.**

"It is true…that the exhaustion requirement is not jurisdictional because the FOIA does not unequivocally make it so. " *Hidalgo v. FBI,* 344 F.3d 1256, 1258 (D.C. Cir. 2003). Therefore, it is within a court's discretion to entertain arguments of requester, who failed to exhaust. *National Security Counselors v. U.S. Dep't of Justice,* 848 F.3d 467, 477 (D.C.Cir.

2017) (Jeffrey Stein sought documents from the FBI, which then charged him a fee of $665. Stein did not file an administrative appeal; the Court ruled that "the purposes of the exhaustion doctrine would not be served by declining to hear Stein's claim.")

**Plaintiffs have constructively exhausted their administrative remedies, because the agency has not yet made a response in compliance with section 552(a)(6)(A)(i).**

Section 552(a)(6)(A)(i) requires the agency to notify the requester of "the reasons" for the adverse action. The DHS has not yet done that. Therefore, under section 552(a)(6)(C), the requester "shall be deemed to have exhausted his administrative remedies…"

**If plaintiffs had filed an administrative appeal, they would have destroyed their standing to challenge the administrative process.**

If plaintiffs had filed an administrative appeal, and then filed a lawsuit, they would not have standing to challenge the initial response of the DHS. That was the ruling of the court in *Anguimate v. DHS*, [ECF #21, Civ. Action No. 12-0791 (RBW) March 26, 2013.]  The DHS agrees with this ruling. The DHS cited this ruling of *Anguimate* in the case *Bayala v. DHS,* Case No. 14-cv-007, in ECF #14-2, filed on April 14, 2014. At note 7 of ECF #14-2, the DHS wrote, concerning the *Anguimate* case: "The court found, based on the parties supplemental memoranda, that the Plaintiff did not have standing to challenge to USCIS' administrative response to her FOIA request. *See* Exhibit D."

In *Bayala v. DHS,* 246 F. Supp. 3d 16, note 10, the Court commented upon the March 26, 2013 *Anguimate* ruling, agreeing with DHS: "…[the] FOIA requester did not have standing to challenge an allegedly deficient initial response letter…."

Plaintiffs want to challenge the initial response of DHS. Therefore, they cannot file an administrative appeal. The DHS has the policy and practice of sending out computer-generated boilerplate in its initial responses to requesters. The Court should rule upon this practice. "FOIA

thus provides an important vehicle for vindicating significant rights- and for keeping prosecutors honest. Indeed, in some cases it provides the *only* vehicle." *Price v. Dep't of Justice Attorney Office,* 865 F.3d 676, 682 (D.C.Cir. 2017) (emphasis in original).

**This Court indeed has the jurisdiction and duty to review agency action.**

"We begin with the strong presumption that Congress intends judicial review of administrative action." *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 670 (1986). Because of this "strong" presumption, "each category of non-reviewability must be construed narrowly." *Amador County v. Salazar,* 640 F.3d 373, 379 (D.C.Cir. 2011).

In *Mead Data Central v. Dep't of Air Force,* 566 F.2d 242, 251 (D.C. Cir.1977), the Court stated, "We agree with Mead Data that the objective of the *Vaughn* requirements, to permit the requesting party to present its case effectively, is equally applicable to proceedings within the agency." *Accord: Webb v. Dep't of Health and Human Services,* 696 F.2d 101, 107, n. 47 (D.C. Cir. 1982). (A court is NOT precluded "from reviewing the procedures followed by an agency at the administrative level.")

Plaintiffs argue the initial response of the DHS is defective. The Court should make a ruling.

"This circuit's case law reflects the wide latitude courts possess to fashion remedies under FOIA, including the power to issue prospective relief." *C.R.E.W. v. U.S. Dep't of Justice,* 846 F.3d 1235, 1242 (D.C.Cir. 2017). Equitable powers of a court are broad, "for breath and flexibility are inherent in equitable remedies." *Id.* [citations omitted].

**Concerning the ability to segregate facts out of an asylum officer assessment, the DHS is acting in bad faith.**

The initial response of the DHS states that the Assessment "contains no reasonably segregable portion(s) of non-exempt information."  This is a bold, amazing statement for two reasons: first, because the DHS gives no reasons for its conclusion; and second, because the DHS is ignoring the four courts which have held to the contrary.

The Court in *Bayala v. DHS*, 2017 WL 3841828 (D.D.C. September 1, 2017) found that 8 paragraphs were segregable. Three other courts support the decision in *Bayala*:

 -*Gosen v. US CIS*, 118 F. Supp. 3d 232, 243 (D, D.C. 2015)

 -*Abtew v. DHS*, 47 F. Supp. 3d 98, 114 (D.D.C. 2014): The first six paragraphs are "easily" segregated.

-*Gatore v. U.S. Dep't of Homeland Security*, 177 F. Supp. 3d 48, 53 (D.D.C. 2016)

Four federal courts have stated that they believe there are indeed portions of an asylum officer assessment that can be segregated and disclosed.  Nonetheless, the DHS continues to issue hundreds of boilerplate initial responses that state there is "no" portion of the Assessment that can be segregated and disclosed. This shows bad faith of the DHS. Furthermore, the DHS gives no reasons why nothing can be segregated. The DHS did not appeal any of the above four decisions. The DHS offers no explanation for why it ignores four federal judges.

The behavior of DHS is similar to the behavior of the agency in *Payne Enterprises v. U.S.,* 837 F.2d 486 (D.C.Cir. 1988). In that case, the Air Force repeatedly declined to disclose information to petitioners notwithstanding that the Air Force acknowledged it was following an 'impermissible practice' in evaluating FOIA requests." Noting that "FOIA imposes no limits on courts' equitable powers in enforcing its terms," the court of appeals remanded the case to the district court with instructions to award declaratory relief to Payne and also to "consider the

propriety of injunctive relief" after "evaluat[ing] the likelihood that the Air Force will return to its illicit practice of delay in the absence of an injunction, " 837 F.2d at 494-95. The DHS is ignoring the rulings of four judges. It will likely continue to do so. The DHS is content to be sued time and time again. This Court should put a stop to this.

**Plaintiffs Khine and Catholic Charities may now seek a "re-write" of the DHS initial response letter.**

In *Bayala v. DHS,* 246 F. Supp. 3d 16 (D.D.C. 2017), the Court ruled that Bayala may not seek a re-write of the initial response. However, the instant case is in a different posture, with an additional plaintiff, with additional allegations. Plaintiffs respectfully urge the Court to re-consider its earlier ruling.

To rule that upon arrival in district court, the FOIA requester may not challenge the administrative process of the agency, is to rule that the agency process is immune from judicial scrutiny. This means the agency can do anything it wants: it could issue a one-sentence initial response that said, "The documents you requested are exempt under exemptions 1-9." This cannot be the intent of Congress.

*The Court should reconsider its ruling in Bayala, 246 F. Supp. 3d 16*

In *Bayala,* 246 F. Supp. 3d 16, the Court cited *Budik, Beck,* and cases under Title VII of the Civil Rights Act. These authorities do not support the proposition that plaintiffs may not seek a re-write.

In *Budik v. Dep't of Army,* 742 F. Supp. 2d 20 (D.D.C. 2010), the requester, Dr. Budik, was a former employee who demanded, and received several documents. The Army did not claim Budik failed to exhaust her administrative remedies. Budik demanded still more documents; the Army motion for summary judgment was denied by the Court. Budik did not

challenge the initial response of the agency in her lawsuit. Budik did not assert claims based

upon section 552(a)(6)(A)(i). Any dicta in the case about other subjects is quite tangential.

In *Beck v. U.S. Dep't of Justice,* 1991 WL 519827 (D.D.C. 1991) Mr. Beck demanded

and received several documents. But he wanted more. He filed suit, and then complained the

agency refused to process administrative appeals for some later requests. He did not challenge

the initial response of the agency; nor did he assert claims based on section 552(a)(6)(A)(I). Any

dicta in this case about other subjects is quite tangential.

The Title VII statute is very different from the FOIA statute. 5 U.S.C. section 552,

imposes duties upon the agency. If the agency violates the statute, it can be sued. Title VII of the

Civil Rights Act, 42 U.S.C. section 2000e, imposes duties upon employers. If the employer

violates the statute, it can be sued. Title VII does not permit the aggrieved employee the right to

sue the Equal Employment Opportunity Commission ["EEOC"].  That EEOC has sovereign

immunity.

The fact that employees cannot sue the EEOC is not relevant or analogous to the instant

case. In the case at bar, Congress has declared that the DHS has waived its sovereign immunity

concerning the FOIA: the DHS can be sued for violating the FOIA.

*The fact that de novo review is available does not erase any statutory duties of an agency.*

Congress imposed duties upon an agency in section 552(a)(6)(A)(i).  Nowhere did

Congress state these duties could later be erased or ignored.

*De novo* review is called for in other contexts.  For example, police officers at times

make warrantless searches. Questions of reasonable suspicion and probable cause for such

searches are reviewed *de novo* by courts. *Ornelas v. U.S.* 517 U.S. 690, 697 (1996). This does

not mean that police officers can do whatever they want: they still must follow the Fourth Amendment and other laws.

The Court of Appeals conducts a *de novo* review of a district court's interpretation of sentencing guidelines. *U.S. v Kayode,* 254 F.3d 204, 216 (D.C.Cir. 2001). This does not mean the district court can act in disregard of statutes and precedent. The district court review of the report and recommendation of a magistrate judge is *de novo. Holland v. Berryhill,* 2017 WL 3730987 (D.D.C. 2017). In all of these situations, the existence of *de novo* review does not obviate or erase the duties of the first adjudicator.

*For the average FOIA requester, it is often not a benefit to be "allowed" to proceed directly into district court.*

It is expensive and time-consuming for a person to file a case in district court. Very few lawyers are available to file FOIA cases. The Court can take judicial notice that the average asylum applicant is not wealthy, is not versed in FOIA law, and is not likely to file a lawsuit. The DHS is also aware of this. The DHS knows that very few requesters will ever file suits: so, the DHS can mail out confusing and inaccurate boilerplate denials, and feel confident it can get away with it.

The plaintiffs in this case want to help requesters get information *without* having to file lawsuits. Congress wants this result. Society wants less lawsuits, not more.

**The initial response of the DHS violates the Freedom of Information Act in several ways.**

The DHS responded to plaintiffs' request via a letter dated July 12, 2017, attached to the complaint as Exhibit 2. [ECF #1-2]. It violates the FOIA in several ways, as set forth in the complaint.

> *Plaintiff Khine has the right to be told whether the agency has a specific document requested by Khine.*

As set forth in the First Cause of Action, Khine requested, among other documents, the Assessment of the asylum officer. The DHS response does not mention the word "Assessment." The response does not state whether or not the DHS has, or ever had, the document. Instead, it states that "3 pages" were sent to ICE. Was the Assessment sent to ICE? If it was, Khine perhaps cannot file an administrative appeal to DHS about this document.

Where a requester asks for a specific document, the agency must state, at a minimum, if it has or had the document.

*Plaintiff Khine has the right to be told the real reasons why the Assessment was withheld. [Part One]*

As set forth in the Second Cause of Action, the DHS violated the FOIA by giving false reasons why the Assessment was withheld: it is exempt under the "PA;" it was "prepared in anticipation of litigation;" it is a "confidential communication between attorney and client." These statements are false. This violates the FOIA.

Congress has imposed duties upon the DHS in 5 U.S.C. § 552 (a)(6)(A)(i). The DHS must tell the requester "the" reasons for its actions. This means the real reasons, and only the real reasons.

5 U.S.C. § 552(a) provides: "Each agency shall make available…."

5 U.S.C. § 552(a)(6)(A) provides: "Each agency, upon any request…shall- "

5 U.S.C. § 552(a)(6)(A)(i) provides: [each agency shall] determine within 20 days… and shall immediately notify the person…the reasons therefor, and the right of such person to appeal…"

The word "shall" is used three times in this portion of the statute. This shows that Congress was serious: it demands that the agency do things. The Court must enforce the thrice-repeated mandate of Congress.

The initial response does not contain what may be the real reason why the DHS believes the Assessment is exempt: because it is protected by the "deliberative process privilege." This phrase is not found in the initial response. This violates the FOIA.

Congress knows the difference between "shall" and "may" as indicated by its use of the word "may" in 5 U.S.C. § 552(a)(4)(E)(i), which provides: "The court may assess against the United States reasonable attorney fees…"

When Congress uses "shall" in one part of a statute, and "may" in another, courts should apply the law as written: "shall" means "shall." *Kingdomware Technologies v. U.S.,* 136 S. Ct. 1969, 1977 (2016).

5 U.S.C. § 552(a)(6)(A)(i) uses the word "shall" three times, and orders the agency to give "the" reasons in 20 days, and "immediately notify the person…."  The statute does not say the agency may give "the" reasons only after a lawsuit has been filed. The reasons must be given in 20 days.

*Plaintiff Khine has the right to be told why nothing can be segregated out of the Assessment.*

The initial response of DHS does not give a reason why nothing can be segregated. If the Assessment was "prepared in anticipation of litigation," perhaps it is exempted under the "work product" doctrine. In that case, perhaps there is no duty to segregate anything out of such a document.  Is that why the DHS believes nothing can be segregated? Or, does DHS believe that the only material that could be segregated out is material that "would make no sense at all"? If so, the DHS should so inform the requester.  As set forth in the Third Cause of Action, the DHS is violating the FOIA.

Four courts have held that material can be segregated out of an assessment: *Bayala, Gosen, Abtew,* and *Gatore.*  This fact makes it all the more remarkable that the DHS states that

"nothing" can be segregated out and disclosed to the requester. If the DHS really believes the four courts are wrong, it should explain why to the requester.

*Plaintiff Khine has the right to be told what documents were withheld in full.*

As set forth in the Fourth Cause of Action, the initial response of DHS states that "8 pages" were withheld in full. What were those pages? The DHS is holding the pages in its hand! It would be easy to tell Khine what the pages are. The Assessment might be 3 pages long; what are the other 5 pages? It violates the FOIA for an agency to not describe what is being withheld.

*Plaintiff Khine has the right to be told what documents were sent to ICE.*

The Fifth Cause of Action notes that "3 pages" were sent to ICE, for ICE to respond. Was the Assessment sent to ICE? The DHS FOIA processor is holding the 3 pages in his hand: it is easy for him to tell the requester what is being sent away.  Is it proper for the pages to be sent to ICE, an event that will result in further delay? How can Khine contest this transfer, if she does not know what the pages are? It violates the FOIA to send un-described pages away. *McGehee v. C.I.A.,* 697 F.2d 1095, 1110 (D.C.Cir. 1983).

*Plaintiff Khine has the right to be afforded a "meaningful" administrative appeal.*

As set forth in the Eight Cause of Action, Khine cannot make a meaningful administrative appeal, because the initial response of DHS is lacking in many respects.

Even in the absence of a statute, Due Process ordinarily requires that the government provide "the opportunity to be heard at a *meaningful* time and in a *meaningful* manner." *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976) (emphasis added) (citation and quotation omitted).  The government must provide "the opportunity to *effectively* be heard." *National Council of Resistance of Iran v. Dep't of State,* 251 F.3d 192, 208 (D.C. Cir. 2001) (emphasis added) (citation and quotation omitted).

Plaintiffs are in the same position as Shermco Industries. In *Shermco Industries, Inc. v. Sec'y of U.S. Air Force,* 452 F. Supp. 306, 317, note 7 (N.D. Tex. 1978), reversed on other grounds 613 F.2d 1314 (5th Cir. 1980).   The Court stated:

"It would be impossible for a requesting person to effectively appeal an agency decision through the administrative process with any hope of changing the agency's mind if the person were denied access to adequate information about the adverse decision. A person cannot effectively appeal a decision about the releasability of documents or the charging of fees if he is not informed of at least a list of the documents to which he was denied access, what fees he will be charged for releasable documents, and why those decisions were made. Denial of this information would in all likelihood be a violation of due process as well as effectively gutting the reasons for applying the exhaustion doctrine in FOIA cases. "

The Administrative Procedures Act, 5 U.S.C. § 553(c), provides that "the agency shall give interested persons an opportunity to participate in the rulemaking…" This means that the opportunity "must be a meaningful opportunity." *Rural Cellular Ass'n v. FCC,* 588 F.3d 1095, 1101 (D.C. Cir 2009).  The initial response of DHS in this case does not give plaintiffs a "meaningful" opportunity to appeal.

**Even if the DHS is given permission to later amend its initial response, DHS still has the duty to make a good faith effort to obey the FOIA in its initial response.**

If a drunk driver goes through a red light and runs over a pedestrian, sending the pedestrian to the hospital, the pedestrian has "a" remedy: sue the bad driver, and make him pay damages for hospital bills, lost wages, and pain and suffering.  This is "a" remedy, but not a good one: the pedestrian doesn't want to be run over! The driver has the duty to drive soberly and carefully. He has those duties, regardless of what remedies a pedestrian may have.

5 U.S.C. § 552(a)(6)(A)(i) requires an agency to give its reasons "within 20 days" and to "immediately" inform the requester. This means the agency must give its reasons at the administrative level. It does not mean an agency is allowed to give its reasons only to those

requesters who file federal lawsuits. The fact that some courts allow tardy agency supplements does not negate the statute: the agency must give "the" reasons "within 20 days."

**The DHS must make a good faith effort to obey the FOIA in its initial response; it should be allowed to make an amendment only upon a showing of good cause.**

To be sure, courts have allowed agencies to prevail on an exemption not raised at the agency level: *see Jordan v. U.S. Dep't of Justice,* 591 F.2d 753, 780 (D.C. Cir. 1978). In that case, the Court suggested that untimely assertions could be allowed if: a) there was a substantial change in the facts or law; or b) "pure mistake."  If there was "confidential information comprising the nation's foreign relations or national security," a court in its discretion could allow an untimely amendment. *Id.* But, "we do not by any means imply that either the district of appellate court has free-ranging discretion in FOIA cases."  *Id.*

However, the *Jordan* Court did not mention §552(a)(6)(A)(i), which states each agency "shall" give "the reasons" for its determination "immediately."

In *C.R.E.W. v. Dep't of Justice,* 854 F.3d 675, 679 (D.C.Cir. 2017) the Court ruled that the belated assertion of a new exemption was untimely. If an agency raises exemptions one at a time, there is delay. Delay interferes both with the statutory goals of efficient, *prompt* disclosure, and full disclosure of information, and with interests of judicial finality and economy." [citing *Maydak v. DOJ,* 218 F.3d 760, 764 (D.C.Cir. 2000).]

A "robust timeliness rule," one that prevents belated assertions, will promote "efficiency in the long run." 954 F.3d at 680. "A robust timeliness rule encourages the Government to present all its arguments the first time around. Weakening that rule lessens the incentive. In addition, requiring a FOIA requester to brief and argue the merits of newly asserted defenses— rather than simply adverting to the timeliness rule—imposes additional costs on that party. . . .

These considerations suggest that a robust timeliness rule well serves FOIA's goal of a prompt and efficient process." *Id.*

*C.R.E.W. v. Dep't of Justice,* 854 F.3d 675, 679 (D.C.Cir. 2017) did not mention §552(a)(6)(A)(i), which states each agency "shall" give "the reasons" for its determination "immediately."

It is unfair to the requester if the agency is allowed to assert a new exemption at the court of appeals. It is also unfair if a new exemption is raised at the district court level. The agency should make all of its exemptions and reasons "immediately," as per the statute. The *Jordan* and *C.R.E.W.* cases do not mention, let alone construe section 552(a)(6)(A)(i). Therefore, they are not binding upon this Court, in this case. The Court should impose a "robust" timeliness rule upon the DHS: the DHS must obey the FOIA in its initial response to the requester. The DHS may amend its response later, upon good cause shown..

In *Shapiro v. U.S. Dep't of Justice,* 239 F. Supp. 3d 100, 109-10 (D.D.C. 2017), the Court allowed the FBI to assert one untimely exemption, but disallowed another. The Court noted that "the case law recognizes that the district courts retain substantial discretion to determine whether an untimely FOIA defense has been forfeited. " That discretion "must be guided by the Court's balancing of principles of fairness, efficiency, and finality, along with due respect for FOIA's statutory goals of efficient, prompt, and full disclosure of information." *Id.* [internal punctuation and citations omitted]. In *Shapiro,* the Court declined to allow the FBI to assert a deliberative process privilege, because to do so posed "a substantial risk of expanding the scope and duration of the present litigation, without good cause and to the unfair detriment of Plaintiffs." [quoting from *Shapiro I,* 153 F. Supp. 3d at 284.]

*It is unfair to allow an agency to amend its response, when in many circumstances non-governmental parties are not so allowed.*

In cases under the Administrative Procedures Act, the government insists that claims must be asserted at the agency level, and that claims not made there are waived. For example, in *Koretoff v. Vilsack,* 707 F.3d 394, 397 (D.C. Cir. 2013), the Secretary of Agriculture proposed a rule requiring almonds to be treated with heat or chemicals, to prevent the spread of salmonella. A group of almond producers objected to the rule; however, they did not make any arguments during a time period of "notice and comment." The Secretary then argued the claims were waived, and could not be asserted in district court. The court agreed.

The Environmental Protection Agency ["EPA"] argued that the Court should not consider untimely claims and evidence asserted by a company. The Court agreed: "We have continually stressed that parties opposing NPL listing must present their claims clearly and specifically to the agency before raising them in a petition for review." *CTS Corp v. E.P.A.,* 759 F.3d 52, 60 (D.C.Cir. 2014) (citations omitted).

The government can insist upon assertion of claims at the agency level but a FOIA requester cannot? This is unfair.

For another case where the government insisted that claims must be asserted at the agency level, see *Gill v. U.S. Dep't of Justice,* 2017 WL 5330086 (D.C. Cir. 2017). In that case, a Muslim FBI agent was aggrieved by his employer, so he made an administrative claim: he sought review with the Access Review Committee ["ARC"].  At the ARC, the agent asserted claims and theories of relief, but did *not* claim he was unfairly treated because he was a Muslim. The ARC ruled against him; he filed a complaint with the U.S. District Court, and an appeal to

the D.C. Circuit. In Court, the agent brought a new claim: he was unfairly treated because of his religion. The D.C. Circuit promptly ruled that this claim had been forfeited, because it had not been raised at before the ARC. "Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." (quoting from *United States v. L.A. Tucker Truck Lines,* 344 U.S. 33, 37 (1952)."   2017 WL at *3.

If private litigants must assert all claims at the administrative level, so should the government.

Courts at times refuse to allow plaintiffs to amend their complaints. In *James Madison v. Dep't of Justice,* 208 F. Supp. 3d 265, 280 (D.D.C. 2016), the government argued plaintiff should not be allowed to amend, because there had been "undue delay and further delay would prejudice Defendants, who have already spent considerable time and effort briefing summary judgment…." The Court agreed with Defendants.

Courts at times refuse to allow defendants to add an untimely affirmative defense to their Answer, under Civil Rule 8(c). *Harris v. Sec'y, U.S. Dep't of Veterans,* 126 F.3d 339, 343-45 (D.C.Cir. 1997).  In order "to prevent the sandbagging of another party, we have generally held that issues not raised until the reply brief are waived."  *New York Rehabilitation Care v. NLRB,* 506 F.3d 1070, 1076 (D.C.Cir. 2007).

**This Court has broad equitable powers to effectuate the purposes of the FOIA.**

The Court should order the agency to re-write its initial response. After that, perhaps plaintiffs will file an administrative appeal. That appeal might be fruitless; or it might not. The agency may give plaintiffs what they want, thereby obviating any further federal litigation.

Congress knows how to deprive a court of broad equitable power when it chooses to do so. It has not done so here. "The FOIA imposes no limits on courts' equitable powers in enforcing its terms." *Payne Enterprises v. United States,* 837 F.2d 486, 494 (D.C.Cir. 1988). **The U.S. District Court has broad powers.** It has the power "to do equity and to mold each decree to the necessities of the particular case." *Porter v. Warner Holding Co.,* 328 U.S. 395, 398 (1946) [citations and quotations omitted]. It should "accord full justice to all the real parties in interest." *Id.* "Only in that way can equity do complete rather than truncated justice." *Id.*     In *Mead Data Central v. Dep't of Air Force,* 566 F.2d 242, 251 (D.C. Cir.1977), the Court stated, "We agree with Mead Data that the objective of the *Vaughn* requirements, to permit the requesting party to present its case effectively, is equally applicable to proceedings within the agency." *Accord: Webb v. Dep't of Health and Human Services,* 696 F.2d 101, 107, n. 47 (D.C. Cir. 1982). (A court is NOT precluded "from reviewing the procedures followed by an agency at the administrative level.")

In *Mead Data,* the Air Force gave very little information to the requester, at the administrative level. The Court stated, "We do not excuse the Air Force's failure to provide Mead Data with sufficient detail about the nature of the withheld documents and its exemption claims at the administrative level."  566 F.2d at 251.  In the instant case, the DHS gave incomplete and misleading information to the requester. The Court should remedy this by ordering the DHS to re-write its initial response.

**The DHS motion to dismiss "claims" does not mention the claims of plaintiff Kay Khine.**

ECF #11, "Defendant's Motion to Dismiss Claims," does not mention the First through Eighth Causes of Action, all of which were asserted by Kay Khine.

Defendant's Motion does not mention the "Policy or Practice Allegations" asserted by Kay Khine in paragraphs 74-78 of the Complaint. The allegations in those paragraphs are deemed to be true. Those paragraphs state that for the past six years, the same DHS employee, Jill Eggleston, has sent over 100 initial responses to requesters, and that each response violates the FOIA. Paragraph 74 states that DHS has a uniform policy or practice of violating the FOIA, and that this will continue during the future.

The DHS Motion does not mention the class action allegations, set forth at paragraphs 79-88 of the Complaint. Those allegations are deemed to be true, at this stage of the litigation. Those paragraphs state that over 100 requesters are similarly situated to Kay Khine, and that she should be the representative of a class. Paragraph 87 states that "Defendant has a policy and practice of providing defective computer-generated, initial responses to FOIA requesters."

The DHS does not even attempt to explain why any one of these claims should be dismissed.

**The DHS motion to dismiss "claims" does not mention the claims of plaintiff Catholic Charities.**

ECF #11, "Defendant's Motion to Dismiss Claims," does not mention paragraph 9 of the complaint: "Catholic Charities has made many similar FOIA requests in the past; it has many such requests now pending; and it will make such requests in the future."

ECF #11 does not mention the Ninth Cause of Action: Catholic Charities' Rights under the FOIA." At paragraphs 62-73, Catholic Charities sets forth its interests and its activities: it has represented asylum applicants for decades, and "will continue to represent them for decades to come."  It provides trainings and seminars for lawyers representing asylum applicants. Its

lawyers write articles for the American Immigration Lawyers Association. It wants to "assist Congress and the advocacy community in the improvement of the asylum system."

"Catholic Charities has pending FOIA requests. It is in the business of frequently filing FOIA requests." Paragraph 67 of the Complaint. "Catholic Charities is being injured by the policies and practices of the defendant." Paragraph 72.

Defendant's Motion does not mention the "Policy or Practice Allegations" asserted by in paragraphs 74-78 of the Complaint. The allegations in those paragraphs are deemed to be true. Those paragraphs state that for the past six years, the same DHS employee, Jill Eggleston, has sent over 100 initial responses to requesters, and that each response violates the FOIA. Paragraph 74 states that DHS has a uniform policy or practice of violating the FOIA, and that this will continue during the future.

The DHS Motion does not mention the class action allegations, set forth at paragraphs 79-88 of the Complaint. Those allegations are deemed to be true, at this stage of the litigation. Those paragraphs state that Catholic Charities should be the representative of a class. Paragraph 87 states that "Defendant has a policy and practice of providing defective computer-generated, initial responses to FOIA requesters."

The DHS does not even attempt to explain why any one of these claims should be dismissed.

*Plaintiff Khine has the right to be told the real reasons why the Assessment was withheld. [Part Two]*

A.  The initial response of DHS does not give "the" reasons for its determination.

5 U.S.C. § 552(a)(6)(A)(i) requires an agency to give "the" reasons for its determination. This means the real reason.  The real reason, apparently, why the DHS did not furnish the assessment was because of the "deliberative process privilege."  This phrase is not found in the DHS letter.

 "The" means "the." An agency must give "the" reasons for its refusal to disclose documents. It does not mean a list of possibilities. In this case, the agency gave a boilerplate list of possibilities as its reasons. "The statutory requirement that the agency provide 'the reasons' for its 'determination' strongly suggests that the reasons are particularized to the "determination'- most obviously, the specific exemptions that may apply to certain withheld records." *Citizens for Responsibility and Ethics in Washington v. F.E.R.C.*, 711 F.3d 180, 186 (D.C.Cir. 2013). In *Mead Data Central v. U.S. Dep't of Air Force,* 566 F.2d 242, 251 (D.C.Cir. 1977), the Air Force provided very little information to the requester, at the administrative level. The Court stated, "We do not excuse the Air Force's failure to provide Mead Data with sufficient detail about the nature of the withheld documents and its exemption claims at the administrative level." *Id.*

The Merriam-Webster online dictionary, for the second meaning of "the," states that it means: "used as a function word to indicate that a following noun or noun equivalent is a unique or a particular member of its class <*the* President >< *the* Lord." [italics in original]

http://www.merriam-webster.com/dictionary/

 In *Noel Canning v. N.L.R.B., 705* F.3d 490, 500 (D.C.Cir. 2013), the Court stated that there was an important difference between "the Recess," and "a recess," as used in Article II of our Constitution. Citing a dictionary from 1755, the Court found that then, "as now, the word 'the' was and is a definite article...' the' [is defined as an] 'article noting a particular thing (emphasis added). Unlike 'a' or "an,' that definite article suggests specificity." The Court further stated that

"it makes no sense to adopt the Board's proposition that when the Framers said, 'the Recess,'
what they really meant was 'a recess.'" *Id.*

> At times, in the absence of a statute, a court will mandate that an agency gives reasons for
its decisions. For example, in *Encino Motorcars v. Navarro,* 136 S. Ct. 2117, 2125, (2016), the
Department of Labor had issued a regulation without giving reasons. The Supreme Court
reversed and remanded, stating: "One basic procedural requirement of administrative rulemaking
is that an agency must give adequate reasons for its decisions." An agency has a "duty to
explain." *Id.* at 2126. Where an "agency in fact gave almost no reasons at all," the Supreme
Court disapproved. *Id.* at 2127. In the instant case, there is a statute: 5 U.S.C. § 552(a)(6)(A)(i).
If in the absence of a statute, an agency must give reasons, then all the more when there is a
statute mandating reasons, the agency must give reasons.

> B.  It violates the FOIA to hide "the" reasons in a list of possibilities.

"[I]t is preposterous to contend that all of the information is equally exempt under all of the
alleged exemptions." *Vaughn v. Rosen*, 48 F.2d 820, 827-28 (D.C.Cir. 1973). Yet, that is what
the initial response claims.

> The agency letter in the instant case improperly lumps all documents into several
categories. The agency letter is more vague and confusing than the explanation criticized in
*Prison Legal News v. Samuels,* 787 F.3d 1142 (D.C.Cir. 2015). In that case, the requester sought
documents showing all money paid by the agency for lawsuits and claims. The agency furnished
a declaration from Wilson J. Moorer, who put documents into categories, and specified the
exemptions that applied to each category. However, the Court ruled that it was improper to lump
all kinds of claimants and witnesses together. *Id.* at 1150. An employee assaulted by another
employee is a very different kind of case than an inmate who was held 154 extra days. A sexual

assault is very different from being hit in the eye by an object. There is a wide variety of privacy interests at stake: some employees were victims; some were perpetrators. An agency must give sufficient information "to allow a court to determine whether specific claimed exemptions are properly applied." *Id.* (quoting *Gallant v. NLRB,* 26 F.3d 168, 173 (D.C. Cir. 1994).

In the case *In re Harman International Industries, Inc. Securities Litigation,* 791 F.3d 90, 102 (D.C. Cir. 2015), a securities fraud case, the Court criticized the company for using "mere boilerplate" to warn investors of risks. A company must tailor its statements to the "specific circumstances" of its business; providing statements "of no "useful quality" will not shield the company from liability. *Id.*  "The consistency of the defendants' language over time despite changing circumstances belies any contention that the cautionary language was tailored to the specific future projection." *Id.*  at 107 (internal punctuation and citation omitted). *Accord: Southland v. INSpire,* 365 F.3d 353, 372 (5th Cir. 2004) (a company that gives "merely a boilerplate litany of generally applicable risk factors" violates the securities law). See also: *U. S. v. Rutigliano,* 790 F.3d 389, 394 (2d Cir. 2015) (concerning the guilt of a person accused of helping employees submit false applications for disability payments, that fact he used "the same boilerplate language to describe individual afflictions of many retirees" is relevant.)

D. The phrase "the reasons" is used in many other statutes. If the court allows this agency to be sloppy, glib, and careless, other agencies will follow suit.

42 U.S.C. § 405(b)(1) provides that if the Commissioner of Social Security makes a "determination" that is adverse to the individual, the Commissioner shall state "the reason or reasons" upon which it is based. Courts have often reversed and remanded determinations that violate this statute. *Treichler v. Commissioner,* 775 F.3d 1090, 1103 (9th Cir. 2014) ("Vague allegations," without "specific findings" are insufficient. When "boilerplate" is "routinely included" in a decision, and no reasons are provided, the case shall be remanded). *Cox*

*v. Commissioner,* 615 Fed. Appx, 254, 260 (6th Cir. 2015) (an ALJ has the duty to give "the

reason or reasons" for conclusions; using "the same boilerplate language" is disfavored.)

18 U.S.C. § 3553(c) provides that in a criminal sentencing case, the judge shall state "the

reasons" for the sentence. Failure to do so requires a remand.

Several more statutes include the phrase "the reasons:"

7 U.S.C. § 136f (b): the officer must give the owner "the reason for the inspection"
10 U.S.C. § 2225(b)(5)(B): The Secretary shall provide "the reasons" for a purchase
10 U.S.C. § 2306a(a)(5): the head of procuring …."the reasons for the determination."
10 U.S.C. § 2323(d)(2): The Secretary of Defense need not comply with a goal of 5 percent
contracting, if the Secretary provides Congress with "the reasons" for his determination to do so
15 U.S.C. § 637(a)(1)(A): The Secretary of a department "shall specify the reasons why …"
15 U.S.C. § 637(f)(5) "in the case of a procurement…. a statement of the reason….."
20 U.S.C. § 1099b(i) The Secretary…higher education…."the reasons"


Under the FOIA, an agency must give "the reasons" for its determination. 5 U.S.C. section

552(a)(6)(a)(i).  If the Court allows the DHS to satisfy this statute with sloppy, inaccurate

boilerplate, other agencies will be encouraged to follow suit. This cannot be the intent of

Congress.

CONCLUSION

The DHS is violating the mandates of FOIA and is ignoring the rulings of four courts. Its

motion to dismiss should be denied.

December 6, 2017

Respectfully submitted,

Attorney for Plaintiffs

David L. Cleveland
DC Bar # 424209
 Catholic Charities
924 G Street, NW  Washington, DC 20001
[202] 772-4345 Fax: [202] 386-7032
1949.david@gmail.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

KAY KHINE, et al.,

Plaintiffs

v.                                                              No.  17-cv-1924 [RC]

UNITED STATES DEPARTMENT
OF HOMELAND SECURITY

Defendant

**[PROPOSED] ORDER**

      Upon consideration of Defendant's Motion to Dismiss Claims, it is hereby:

ORDERED that the motion is denied.  It is further

ORDERED: that defendant DHS shall answer the Complaint within 20 days of the date
of this Order.

SIGNED: _____                          Date _____
            U.S. District Judge