# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KAY KHINE and CATHOLIC CHARITIES, | : : : |
| Plaintiffs, | : Civil Action No.: 17-1924 (RC) |
| v. | : Re Document Nos.: 11, 17 |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, | : : : |
| Defendant. | : |

## MEMORANDUM OPINION

### GRANTING DEFENDANT'S MOTION TO DISMISS

## I. INTRODUCTION

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Catholic Charities requested various materials from United States Citizenship and Immigration Services ("USCIS") on behalf of Kay T. Khine ("Khine") (together with Catholic Charities, "Plaintiffs"). In response, USCIS disclosed certain documents, withheld others, and sent Plaintiffs a letter explaining its decision. Unsatisfied with that letter, and without administratively appealing it, Plaintiffs filed this action to compel the United States Department of Homeland Security ("DHS"), in which USCIS is housed, to explain the decision in a more fulsome and detailed manner, such that Plaintiffs can file a "meaningful" administrative appeal.[1] Before this Court are DHS's motion to dismiss and Plaintiffs' motion to file a sur-reply to DHS's motion. Having

---

[1] Because Plaintiffs have brought this action against DHS, the Court will hereafter refer to Plaintiffs' request as being made to DHS, rather than USCIS.

reviewed the parties' submissions, this Court grants both motions and dismisses the complaint for Plaintiffs' failure to exhaust administrative remedies.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Khine is a native of Burma who sought asylum in the United States. Compl. ¶ 12, ECF No. 1. During her asylum process, a United States asylum officer generated an "Assessment of the case" (the "Assessment"). *Id.* This three-page document is allegedly in DHS's possession. Compl. ¶¶ 13, 18.

In February 2017, Catholic Charities submitted a FOIA request on behalf of Khine seeking the Assessment, the asylum officer's notes regarding Khine, and other materials related to Khine's asylum application. *See* Compl. ¶ 15; FOIA Request, Compl. Ex. 1, ECF No. 1-1. In July 2017, DHS produced 860 pages of material and a letter (the "initial response") (1) explaining DHS's response to Plaintiffs' request, including the statutory provisions under which DHS withheld certain documents in part or in full;[2] (2) stating that DHS had submitted certain responsive documents to U.S. Immigration and Customs Enforcement ("ICE") for further consideration; and (3) noting Plaintiffs' right to appeal DHS's initial decision. Compl. ¶¶ 17, 19; Letter from Jill A. Eggleston, Director, FOIA Operations, USCIS, to David L. Cleveland, Counsel for Kay T. Khine (July 12, 2017), Compl. Ex. 2, ECF No. 1-2 ("DHS Letter"). The asylum officer's Assessment was withheld in full as exempt from FOIA, and the initial response explained that withheld documents "contain no reasonably segregable portion(s) of non-exempt information." DHS Letter at 2; *see also* Compl. ¶¶ 40, 45.

---

[2] These include Privacy Act—5 U.S.C. §§ 552a(d)(5), (j)(2) and (k)(2)—and FOIA—5 U.S.C. §§ 552(b)(5), (b)(7)(C), and (b)(7)(E)—provisions.

As noted in the initial response, an appeal would allow Plaintiffs to "preserve [their] rights under FOIA and give the agency a chance to review and reconsider [their] request and the agency's decision." DHS Letter at 2. Under DHS regulations,

> A requester may appeal adverse determinations denying his or her request or any part of the request to the appropriate Appeals Officer. A requester may also appeal if he or she questions the adequacy of the component's search for responsive records, or believes the component either misinterpreted the request or did not address all aspects of the request (i.e., it issued an incomplete response), or if the requester believes there is a procedural deficiency (e.g., fees were improperly calculated). . . . The appeal should clearly identify the component determination (including the assigned request number if the requester knows it) that is being appealed and should contain the reasons the requester believes the determination was erroneous.

6 C.F.R. § 5.8(a)(1). The regulations further state that "[i]f a requester wishes to seek court review of a component's adverse determination on a matter appealable under paragraph (a)(1) of this section, the requester must generally first appeal it . . . ." *Id*. § 5.8(e). While the initial decision regarding Plaintiffs' FOIA request was made by USCIS's National Records Center, *see* DHS Letter, DHS's Office of the General Counsel would adjudicate the administrative appeal. *Id*. § 5.8(b).

Despite the availability of an administrative appeal, Plaintiffs filed the instant action without further recourse to the agency. Compl. ¶¶ 22–23. They contend that an appeal "is futile and illusory" and "is almost certainly likely to result in nothing of value." *Id*. ¶ 3. Their complaint contains three main components.

First, Plaintiffs assert that the initial response violates 5 U.S.C. § 552(a)(6)(A)(i) in several ways,[3] including by failing to identify whether DHS has the Assessment, *id*. ¶ 17; relying

---

[3] This provision states that once an agency receives a proper FOIA request, the agency shall:

on a "boilerplate" list of FOIA exemptions justifying DHS's withholdings, without explaining how the exemptions apply to particular documents, including the Assessment, *id*. ¶¶ 27, 52; failing to explain why non-exempt material cannot be segregated from exempt material, particularly within the Assessment, *id*. ¶ 40; failing to identify which specific documents were withheld in full, *id*. ¶ 45; failing to identify which documents were sent to ICE, *id*. ¶¶ 48–49; failing to explain that disclosing the Assessment would harm DHS, *id*. ¶ 55;[4] and providing insufficient information to allow a meaningful administrative appeal, *id*. ¶ 58. Second, Plaintiffs assert that DHS maintains a "policy or practice" of issuing boilerplate, computer-generated initial response letters that violate FOIA in the ways listed above. *Id*. ¶ 74–76. Third, Plaintiffs assert these claims on behalf of a class of plaintiffs consisting "of all persons who, since September 2011, have made, or will make during the pendency of this lawsuit, a FOIA request for the Assessment of their asylum officer, but were provided an initial response similar to plaintiff Khine." *Id*. ¶ 81. Plaintiffs ask this Court to order DHS to "re-write" the cover letter; to declare that the cover letter violates FOIA; to enjoin DHS from issuing similar letters in the future; to order DHS to "correctly instruct and train its FOIA processors"; and to award reasonable attorney's fees and costs. *Id*. at 14.

---

> determine within 20 days . . . after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of . . . such determination and the reasons therefor . . . [and of] the right of such person to appeal to the head of the agency . . . [any] adverse determination.

*Id*. § 552(a)(6)(A)(i).

[4] Plaintiffs claim that this failure violates 5 U.S.C. § 552(a)(8)(A)(i)(I). Compl. ¶ 56. However, that provision merely establishes the standard for when an agency may withhold information, stating that withholding is appropriate only if "the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection [552(b)]." 5 U.S.C. § 552(a)(8)(A)(i)(I). The provision does not require the agency to disclose information to a FOIA requester outside of the disclosures required by § 552(a)(6)(A)(i).

4

## III. ANALYSIS

Now before the Court are DHS's ripe motion to dismiss and Plaintiffs' ripe motion to file an additional brief, known as a sur-reply.[5] The Court first addresses whether Plaintiffs have standing to assert the diverse array of claims in their complaint. The Court next addresses whether Plaintiffs have satisfied the jurisprudential requirements necessary to raise those claims in federal court. As explained below, while the Court concludes that Plaintiffs have standing to bring the action, it grants DHS's motion to dismiss because Plaintiffs failed to exhaust their administrative remedies. Additionally, the Court grants Plaintiffs' motion to file the sur-reply.[6]

### A. Standing

The Court first evaluates whether Plaintiffs have standing to bring their policy-or-practice claim. While DHS moves to dismiss Plaintiffs' complaint on both jurisdictional grounds under Federal Rule 12(b)(1) and substantive grounds under Federal Rule 12(b)(6), DHS rests both of those arguments on Plaintiffs' failure to exhaust their administrative remedies, as discussed below. *See* Def's. Mem. P. & A. Supp. Def's. Mot. Dismiss ("Def. Mem.") at 3 (stating that because "Plaintiffs failed to exhaust their administrative remedies," they "have failed to state a

---

[5] Although DHS has attached a declaration to its motion to dismiss that was not attached to the complaint or incorporated by reference, the Court need not convert DHS's motion to one for summary judgment because the Court relies only on the complaint, the complaint's attachments, and the parties' briefing to determine the sufficiency of Plaintiffs' allegations. *See Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 98 (D.D.C. 2002) (explaining that a court may evaluate a motion as a motion to dismiss, not a motion for summary judgment, when the court need not rely on materials attached to that motion outside the pleadings).

[6] This Court has discretion to grant leave to file a sur-reply. *See Akers v. Beal Bank*, 760 F. Supp. 2d 1, 2 (D.D.C. 2011). A sur-reply may be appropriate, *inter alia*, when the "proposed surreply would be helpful to the resolution of the pending motion" and the other party would not be "unduly prejudiced." *Glass v. Lahood*, 786 F. Supp. 2d 189, 231 (D.D.C. 2011), *aff'd*, No. 11-5144, 2011 WL 6759550 (D.C. Cir. Dec. 8, 2011). While Plaintiffs' sur-reply in large part repeats the arguments raised in its opposition, the sur-reply is helpful for the Court to understand certain of Plaintiffs' arguments in greater detail. Moreover, DHS consented to the sur-reply, indicating that it would not be prejudiced by the Court's consideration.

claim upon which relief may be granted" and "this Court lacks subject-matter jurisdiction"), ECF No. 11. However, regardless of whether DHS challenged Plaintiffs' standing, it is well-established "that jurisdictional issues may be raised by the court *sua sponte*." *Am. Library Ass'n v. FCC*, 401 F.3d 489, 492 (D.C. Cir. 2005) (citing *Lee's Summit, Mo. v. Surface Transp. Bd.,* 231 F.3d 39, 41 (D.C. Cir. 2000)). The Court therefore must determine whether Plaintiffs have standing to bring a policy-or-practice claim against DHS.

"The irreducible constitutional minimum of standing contains three elements: (1) injury-in-fact, (2) causation, and (3) redressability," *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 11 (D.C. Cir. 2011) (internal quotation marks and citation omitted). To establish "injury in fact," a plaintiff must show that it has suffered "a harm . . . that is 'concrete' and 'actual or imminent, not conjectural or hypothetical.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). However, "[w]hen a plaintiff seeks injunctive or declaratory relief specifically for the purpose of challenging an alleged policy or practice of a government agency, it must [ ] demonstrate that it is 'realistically threatened by a repetition of [its] experience,'" *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 260 (D.D.C. 2012) (quoting *Haase v. Sessions*, 835 F.2d 902, 910–11 (D.C. Cir. 1987)), which requires "plaintiffs [to] not only demonstrate [the] existence [of a policy] but also that they are likely to be subjected to the policy again." *Haase*, 835 F.2d at 911; *see also Tipograph v. DOJ*, 146 F. Supp. 3d 169, 175 (D.D.C. 2015) ("If a plaintiff demonstrates that it will be subjected in the near future to the particular agency policy or practice that it challenges under FOIA, then the injury requirement of Article III standing is satisfied."). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Considering these principles, at this stage the Court

concludes that Plaintiffs' allegations regarding Catholic Charities establish standing to bring their policy-or-practice claim.

First, Plaintiffs have satisfied their burden to "demonstrate [the] existence" of the alleged policy-or-practice. *Haase*, 835 F.2d at 911. "[I]t is well established that '[a] plaintiff is only required to put forth a plausible, more than nebulous assertion of the existence of an ongoing pattern or practice [in order] to establish standing.'" *Muckrock, LLC v. CIA*, 300 F. Supp. 3d 108, 130 (D.D.C. 2018) (quoting *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 260). Plausible allegations of an unwritten FOIA-related policy-or-practice are sufficient, for the D.C. Circuit has rejected any notion that a regulation or other formal agency policy statement is a prerequisite to a policy-or-practice claim. *See Judicial Watch, Inc. v. DHS*, 895 F.3d 770, 777–78 (D.C. Cir. 2018) ("In this circuit it is settled law that informal agency conduct . . . may serve as the basis for a policy or practice claim."); *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988) (holding that a FOIA requester was entitled to declaratory relief even though the challenged practice was "informal, rather than articulated in regulations or an official statement of policy").

Plaintiffs allege that DHS has a policy of sending "computer-generated," "template" letters in response to FOIA requests from asylum applicants seeking disclosure of their assessments. Compl. ¶¶ 75–76. They further allege that DHS has sent over 100 such letters during the past six years. *Id*. ¶ 76. Plaintiffs argue that these template letters violate FOIA in a variety of ways. *Id*. The D.C. Circuit recently held that similar allegations of a "pattern" of informal agency conduct violating FOIA with respect to several identical document requests were sufficient to raise a policy-or-practice claim at the pleading stage. *Judicial Watch*, 895 F.3d at 780. Accordingly, the complaint sufficiently details "specific instances of conduct by [DHS]

7

that [Plaintiffs] claim[] are manifestations of the alleged [policy-or-practice] at issue," *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 260–61, and it alleges that this policy-or-practice was applied to Plaintiffs' FOIA request for Khine's asylum materials and Assessment. *See generally* Compl.

Second, Plaintiffs sufficiently allege that Catholic Charities is "likely to be subjected to the [alleged] policy again." *Haase*, 835 F.2d at 911. "[W]here a FOIA requester challenges an alleged ongoing policy or practice and can demonstrate that it has pending [requests] that are likely to implicate that policy or practice, future injury is satisfied." *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 262 (citing *Citizens for Resp. & Ethics in Wash. ("CREW") v. SEC*, 858 F. Supp. 2d 51, 60 (D.D.C. 2012); *CREW v. Exec. Office of the President*, 587 F. Supp. 2d 48, 60–61 (D.D.C. 2008)); *see also Tipograph*, 146 F. Supp. 3d at 176 (recognizing that a plaintiff may demonstrate a likelihood of future injury by "demonstrat[ing] that [it has] pending FOIA requests that are likely to implicate the [alleged] policy or practice" (internal quotation marks omitted) (quoting *Nat'l Sec. Counselors v. CIA*, 931 F. Supp. 2d 77, 93 (D.D.C. 2013)). Here, Catholic Charities asserts that it "has many such [FOIA] requests [for assessments] now pending; and it will make such requests in the future." Compl. ¶ 9. Plaintiffs suggest that these pending and future requests are "likely to implicate the alleged policies and lead to future injury," *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 261 (citations omitted), because Catholic Charities' "primary institutional activities" include representing asylum applicants and "monitor[ing] and examin[ing] the work of asylum officers," and it "relies heavily and frequently on FOIA to conduct work that is essential to the performance of" these institutional activities. Compl. ¶¶ 64–72. *See Judicial Watch*, 895 F.3d at 782 (holding that Judicial Watch could raise a policy-or-practice claim where the "alleged practice . . . if allowed to continue, would harm Judicial Watch's mission").

Accordingly, construing the complaint in the light most favorable to Plaintiffs, Catholic Charities' pending FOIA requests seeking assessments are "of the same character" as the "more than 100" FOIA requests for assessments that Catholic Charities asserts have prompted DHS's boilerplate, computer-generated, deficient initial responses. Compl. ¶ 76; *see also Muckrock*, 300 F. Supp. 3d at 134 (concluding that the plaintiff had sufficiently established that it "w[ould] be subjected in the near future to the . . . policy or practice that it challenge[d]" because it "[wa]s a serial FOIA requester[ ] [that] . . . consistently file[d] request[s] for emails which [we]re denied," and it "ha[d] pending requests for emails that ha[d] not been denied yet but would be denied based on [the challenged] policy" (citations and internal quotation marks omitted)); *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 262 (concluding that a plaintiff had standing to bring a FOIA policy-or-practice claim because "it had already submitted fifteen FOIA requests to the [defendant]" that "appear[ed] to be of the same character as the specific requests that form[ed] the basis of the plaintiff's [ ]claims"). Plaintiffs therefore possess Article III standing to pursue this lawsuit.[7]

## B. Exhaustion of Administrative Remedies

While Plaintiffs have standing to bring their request-specific and policy-or-practice claims, they have failed to satisfy the key jurisprudential requirement for bringing FOIA claims arising from a request for documents; they have failed to exhaust their administrative remedies.

---

[7] Not only do Plaintiffs have standing to bring a policy-or-practice claim, they also have standing to challenge DHS's response to Plaintiffs' specific FOIA request. In the context of standing under FOIA, "'[t]he filing of a request, and its denial,' constitutes an injury." *Wetzel v. U.S. Dept. of Veterans Affairs*, 949 F. Supp. 2d 198, 202 (D.D.C. 2013) (quoting *McDonnell v. United States*, 4 F.3d 1227, 1238 (3d Cir. 1993)). "The requester is injured-in-fact for standing purposes because he did not get what the statute entitled him to receive." *Zivotofsky ex rel. Ari. Z. v. Sec'y of State*, 444 F.3d 614, 617–18 (D.C. Cir. 2006) (citations omitted). Accordingly, "[a]nyone whose [FOIA] request for specific information has been denied has standing to bring an action[.]" *Id*.

9

In a FOIA case, "[e]xhaustion of administrative remedies is generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990) (citation omitted). "The exhaustion requirement also allows the top managers of an agency to correct mistakes made at lower levels and thereby obviates unnecessary judicial review." *Id.* (citing *McKart v. United States*, 395 U.S. 185, 194 (1969)); *see also Dettmann v. DOJ*, 802 F.2d 1472, 1476 (D.C. Cir. 1986) ("It goes without saying that exhaustion of remedies is required in FOIA cases."). The administrative appeal mechanism undergirds FOIA's "innovation-forcing" function, which requires an "agenc[y] to consider 'adjustments to . . . practices, policies, personnel, and funding as may be necessary to improve its implementation of' the statute." *Judicial Watch*, 895 F.3d at 789–90 (Pillard, J., concurring) (quoting 5 U.S.C. § 552(j)(2)(C)).

Accordingly, in typical FOIA cases, failure to exhaust administrative remedies operates as a "jurisprudential doctrine" to bar premature judicial review when the purposes of exhaustion and the particular administrative scheme support such a bar. *Hidalgo v. F.B.I.*, 344 F.3d 1256, 1258–59 (D.C. Cir. 2003). The D.C. Circuit has stated that exhaustion serves three primary purposes: "giving agencies the opportunity to correct their own errors, affording parties and courts the benefits of agencies' expertise, [and] compiling a record adequate for judicial review[.]" *Avocados Plus Inc. v. Veneman,* 370 F.3d 1243, 1247 (D.C. Cir. 2004) (internal quotation marks and citations omitted); *accord Wilbur v. CIA,* 355 F.3d 675, 677 (D.C. Cir. 2004) (holding that the "purposes and policies underlying the exhaustion requirement" are "to prevent premature interference with agency processes, to give the parties and the courts [the] benefit of the agency's experience and expertise and to compile an adequate record for review."

(citations omitted)). "Administrative exhaustion is designed 'to give the agency a fair and full opportunity to adjudicate [a party's] claims,' which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Nat'l Sec. Counselors*, 931 F. Supp. 2d at 99–100 (emphasis in original) (quoting *Woodford v. Ngo,* 548 U.S. 81, 90 (2006) (citations omitted)).

Applying this guidance in the context of FOIA cases, "a clear principle emerges: Failure to exhaust administrative remedies is *not* a mere technicality, and a court must decline to decide the merits of an unexhausted FOIA claim when the plaintiff fails to comply with procedures for administrative review, denying the agency an opportunity to review its initial determination, apply its expertise, correct any errors, and create an ample record in the process." *Nat'l Sec. Counselors*, 931 F. Supp. 2d at 99–100. "In short, exhaustion of administrative remedies in a FOIA case is treated as an element of a FOIA claim, which, as with all elements of any claim, must be proved by the plaintiff in order to prevail." *Bonner v. Social Sec. Admin.*, 574 F. Supp. 2d 136, 139 (D.D.C. 2008). Cases in this jurisdiction make clear that this principle applies equally to claims challenging agency decisions regarding individual FOIA requests and to policy-or-practice claims arising from those requests.[8]

For instance, in *Dettmann*, the D.C. Circuit dismissed a FOIA requester's policy-or-practice claim because the requester failed to exhaust her administrative remedies with respect to

---

[8] Plaintiffs argue that their policy-or-practice claim and their class action claim should be "deemed to be true" because DHS's motion to dismiss does not address them. Pls.' Opp'n Def. Mem. ("Pls. Opp'n") at 18–20, ECF No. 12. While DHS's motion does not explicitly mention Plaintiffs' policy-or-practice claim, it argues generally that the action should be dismissed in full because "Plaintiffs failed to exhaust their administrative remedies." Def. Mem. at 9. This argument applies equally to Plaintiffs' challenge to DHS's initial response and Plaintiffs' policy-or-practice claim. Moreover, because Plaintiffs' class action claim arises from their policy-or-practice claim, Compl. ¶¶ 81, 83, dismissal of the policy-or-practice claim necessitates dismissal of the class action claim.

11

that claim. *Id*., 802 F.2d at 1477. Although the requester had administratively appealed the defendant agency's initial response to her FOIA request, she "interposed no general objection to the [defendant's] processing of her request pursuant to" the challenged policy, and therefore denied the agency an opportunity to address the policy before suit was filed. *Id*. at 1476. Similarly, in *Shapiro v. DOJ ("Shapiro I")*, another court in this District applied the exhaustion requirement to the plaintiff's policy-or-practice claim and held that the plaintiff satisfied the requirement because the defendant agency addressed the challenged policy in rendering an administrative appeal decision. *Id*., 153 F. Supp. 3d 253, 283 (D.D.C. 2016); *see also Nat'l Sec. Counselors v. DOJ*, 848 F.3d 467, 470 (D.C. Cir. 2017) (applying the exhaustion requirement in evaluating a challenge to the defendant agency's interim FOIA release policy). Moreover, Catholic Charities has availed itself of administrative remedies with respect to other policy-or-practice claims related to asylum assessments. *See Gatore v. DHS*, No. 15-0459, 2018 WL 4053374, at *2, *4 (D.D.C. Aug. 24, 2018) (noting the defendant's assertion that when challenging "a [blanket] policy and practice of never providing any part of an [a]ssessment to a FOIA requester," Catholic Charities received "two levels of review" at the administrative level). Plaintiffs cite no case suggesting as a general matter that FOIA policy-or-practice claims should be exempt from the exhaustion requirement.

There is no dispute that Plaintiffs filed this lawsuit before exhausting their administrative remedies by appealing DHS's initial response. *See* Compl. ¶ 3; Def. Mem. at 9; Pls. Opp'n at 4. Instead, Plaintiffs proffer several arguments for why the well-established exhaustion requirement should not apply to their action. These arguments are unavailing.[9]

---

[9] Both parties acknowledge the similarities between this action and the *Bayala v. DHS* line of cases. Those cases also involved Catholic Charities and an individual plaintiff who filed

First, Plaintiffs argue that DHS's initial response was so deficient that it failed to trigger the exhaustion requirement established by 5 U.S.C. § 552(a)(6)(A)(i). *See* Pls. Opp'n at 4. More specifically, they contend that DHS's "initial response does not contain what may be the real reason why the DHS believes the Assessment is exempt." *Id*. at 11, 21–22. Relatedly, they contend that DHS's initial response improperly listed in a boilerplate fashion the FOIA exemptions upon which DHS relied in withholding information, rather than identifying the specific exemption that applied to each withholding. *Id*. at 21–22. They also contend that they "cannot make a meaningful administrative appeal, because the initial response of DHS is lacking in many [other] respects." *Id*. at 12. Despite Plaintiffs' best efforts, the Court concludes that DHS's initial response contained enough detail to trigger the exhaustion requirement.[10]

---

a FOIA request seeking an asylum assessment, then challenged DHS's initial response in this Court without filing an administrative appeal. *Bayala v. DHS ("Bayala I")*, 72 F. Supp. 3d 260, 262–63 (D.D.C. 2014). This Court initially dismissed the action for failure to exhaust. *Id*. at 266. In reversing and remanding the case, the D.C. Circuit held that because DHS raised new arguments before this Court regarding its withholdings, "the question of administrative exhaustion [was] moot." *Bayala v. DHS ("Bayala II")*, 827 F.3d 31, 35–36 (D.C. Cir. 2016). On remand, this Court dismissed Plaintiffs' claims regarding DHS's initial response as "immaterial." *Bayala v. DHS ("Bayala III")*, 246 F. Supp. 3d 16, 23–24 (D.D.C. 2017) (reasoning that "once de novo review is available, further review of prior administrative proceedings is inappropriate").

In this action, both parties have attempted to address the mistakes flagged by the *Bayala* opinions. For its part, DHS has not responded to Plaintiffs' substantive challenges at this stage, and instead has simply asserted that Plaintiffs' challenges are premature. And Plaintiffs have added additional challenges to DHS's initial response, including a policy-or-practice claim; they have asserted new arguments for why the exhaustion requirement is inapplicable; and they have included a class action claim. *See generally* Compl. However, as discussed, Plaintiffs would have been better served by simply filing an administrative appeal before bringing this action.

[10] Plaintiffs also claim that an administrative appeal would be "futile and illusory." Compl. ¶ 3. Courts have found a plaintiff's administrative appeal to be futile, warranting deviation from the exhaustion requirement, when it appears that the agency has already addressed the plaintiff's claims at a second level of review. *See Hull v. I.R.S., U.S. Dep't of Treasury,* 656 F.3d 1174, 1183 (10th Cir. 2011) (concluding that the purposes of exhaustion did not support barring judicial review where the FOIA requester completed the administrative appeals process and allowed the agency to develop a record, but failed to perfect the initial FOIA

FOIA's exhaustion requirement is triggered by an agency's initial response that satisfies the timing and substantive requirements laid out in 5 U.S.C. § 552(a)(6)(A)(i). As noted, that provision specifies that once an agency receives a proper FOIA request, the agency shall:

> determine within 20 days . . . after the receipt of any such request whether to comply with such request and shall immediately *notify the person making such request of . . . such determination and the reasons therefor* . . . [and of] the right of such person to appeal to the head of the agency . . . [any] adverse determination.

§ 552(a)(6)(A)(i) (emphasis added). And if an agency fails to make and communicate its "determination" regarding a FOIA request within the timeline established in § 552(a)(6)(A)(i), the requester "shall be deemed to have exhausted [its] administrative remedies." *Id*. § 552(a)(6)(C)(i). Construing Plaintiffs' argument liberally, they seem to argue in part that DHS's initial response failed to properly "notify [Plaintiffs] of [DHS's] determination and the reasons therefor," rendering Plaintiffs' administrative remedies constructively exhausted.

The D.C. Circuit recently examined the question of "what constitutes a 'determination' so as to trigger the exhaustion requirement." *CREW v. FEC*, 711 F.3d 180, 186 (D.C. Cir. 2013). The *CREW* plaintiff argued that the FEC failed to issue a determination under § 552(a)(6)(A)(i) where it issued a response to the plaintiff's FOIA request stating:

> The FEC is continuing to process your request and has produced with this letter an initial round of responsive records. You will continue to receive additional responsive records on a rolling basis. Upon the agency's final production of records, you will receive a decision letter that will include information regarding your

---

request by obtaining third-party consent for release of requested tax records); *Ayuda, Inc. v. FTC*, 70 F. Supp. 3d 247, 263 (D.D.C. 2014) (holding that even though the plaintiffs did not raise a particular issue in their initial FOIA request, the exhaustion requirement did not apply to that issue because the agency addressed the issue in its response to the appeal of that request). Plaintiffs provide no reason for the Court to believe that DHS would not address their concerns in an administrative appeal.

> appeal rights. Today's letter does not constitute a final agency decision, and thus is not subject to appeal.

*Id*. at 183. The Circuit agreed with the plaintiff, noting "the Catch–22 that the agency seeks to jam into FOIA: A requester cannot appeal within the agency because the agency has not provided the necessary information" but "the requester cannot go to court because the requester has not appealed within the agency." *Id*. at 186. Analyzing FOIA's statutory scheme, the Circuit held that "in order to make a 'determination' and thereby trigger the administrative exhaustion requirement, the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Id*. at 188; *see also Judicial Watch*, 895 F.3d at 782 (reaffirming the *CREW* standard).[11]

DHS's initial response here complied with the *CREW* standard. It provided 860 pages of material; it explained that DHS withheld certain documents in full because they "contain no reasonably segregable portion(s) of non-exempt information"; it enumerated FOIA—5 U.S.C. §§ 552(b)(5), (b)(6), (b)(7)(C), (b)(7)(E)—and Privacy Act—5 U.S.C. §§ 552a(d)(5), (j)(2), (k)(2)—exemptions that it concluded were "applicable" to withheld information; and it explained that DHS referred Plaintiffs' request to ICE for ICE to provide a "direct response" regarding responsive materials which may have originated from ICE. DHS Letter at 2–3. The initial

---

[11] Plaintiffs cite a forty-year old Northern District of Texas decision laying out a similar, but slightly more demanding, standard for determining when an agency's FOIA response triggers the exhaustion requirement. Pls. Opp'n at 13 (citing *Shermco Indus., Inc. v. Sec'y of U.S. Air Force*, 452 F. Supp. 306, 317–18 (N.D. Tex. 1978), *rev'd on other grounds*, 613 F.2d 1314 (5th Cir. 1980)). This Court applies the more recent D.C. Circuit standard. *Accord Mobley v. DOJ*, 845 F. Supp. 2d 120, 124 (D.D.C. 2012) (expressing skepticism that the standard established in *Shermco Indus.* is supported by FOIA's text).

response also informed Plaintiffs of their right to administratively appeal DHS's decision. *Id*. at 3. The initial response contained "adequate specificity, such that [DHS's determination could] be appealed administratively." *CREW*, 711 F.3d at 189.

Plaintiffs take issue with the level of detail supplied in DHS's initial response, but they do not cite any case law suggesting that the response was insufficient to trigger the exhaustion requirement. Aside from *CREW*, the FOIA cases that Plaintiffs do cite relate to the agency's burden to explain its decision making at the *judicial*, rather than administrative, level. *See Prison Legal News v. Samuels*, 787 F.3d 1142, 1149–50 (D.C. Cir. 2015); *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977); *Vaughn v. Rosen*, 484 F.2d 820, 826–27 (D.C. Cir. 1973). And Plaintiffs have not explained how in this action they have managed to challenge several aspects of DHS's decision making, but somehow could not "meaningfully" raise these same challenges in an administrative appeal. As this Court previously advised Catholic Charities, if it "was unhappy with the reasons proffered by DHS, [it] could have registered this complaint in an administrative appeal rather than filing this action prematurely." *Bayala I*, 72 F. Supp. 3d at 265. Such an appeal would have allowed DHS to further explain its withholdings, including the alleged "real" reason why the Assessment was withheld, and potentially release additional documents.[12]

Second, Plaintiffs somewhat confusingly argue that there is no administrative remedy for a challenge to an agency's initial response to a FOIA request, and therefore that a plaintiff raising such a challenge need not file an administrative appeal. Pls. Opp'n at 2–3. However,

---

[12] While DHS's initial response substantively complied with § 552(a)(6)(A)(i), it was not issued within twenty days as required by that provision. However, this delay did not amount to constructive exhaustion because Plaintiffs' waited until *after* DHS's late response to file this lawsuit. *See Oglesby,* 920 F.2d at 66–67, 71.

Plaintiffs' challenges to DHS's initial response, and its alleged policy-or-practice, arise from a request for specific documents, including the Assessment. Compl. ¶¶ 21, 38, 43, 46, 50, 53, 59, 73, 76, & 83; *cf. Webb v. HHS*, 696 F.2d 101, 106 (D.C. Cir. 1982) (holding that "in the absence of a particularized FOIA request" implicating a challenged regulation, the regulation's validity was not ripe for judicial review). This request and DHS's initial response are governed by § 552(a)(6)(A)(i),[13] which provides for an administrative appeal. *See* § 552(a)(6)(A)(i). Moreover, DHS's regulations state that a FOIA requester may file an administrative appeal if the agency "did not address all aspects of the [FOIA] request (i.e., *it issued an incomplete response*)." 6 C.F.R. § 5.8(a)(1) (emphasis added). Plaintiffs' reliance on unrelated FOIA provisions that do not mandate administrative appeals is unpersuasive. *See* Pls. Opp'n at 2–3.

Third, and finally, Plaintiffs argue that the Court should deviate from the exhaustion requirement in this case because "[i]f plaintiffs had filed an administrative appeal, and then filed a lawsuit, they would not have standing to challenge the initial response of the DHS." Pls. Opp'n at 4. It is true that this Court's *de novo* review would moot Plaintiffs' challenge to DHS's particular initial response here, regardless of whether that challenge was raised in an administrative appeal. *See Bayala III*, 246 F. Supp. 3d at 24 n.10 (D.D.C. 2017) ("Mr. Bayala's alleged inability to take a 'meaningful' administrative appeal is not a legally cognizable injury because Mr. Bayala is now able to assert any challenges to DHS's withholding before this Court."). However, it is well-established that "even though a party may have obtained relief as to a *specific request* under the FOIA, this will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future." *Payne Enters.*, 837 F.2d at

---

[13] As noted, among other claims Plaintiffs allege that DHS failed to comply with § 552(a)(8)(A)(i)(I), but that provision does not entitle FOIA requesters to agency disclosures outside of those required by § 552(a)(6)(A)(i).

17

491; *see also Judicial Watch*, 895 F.3d at 777; *Tipograph*, 146 F. Supp. 3d at 174 ("Because [the plaintiff] alleges that a policy or practice of the FBI will impact her lawful access to information in the future, her claim for prospective declaratory and injunctive relief is not moot simply because the FBI has now provided her with the records to which she is entitled."). Accordingly, to the extent Plaintiffs contend that DHS's alleged policy of sending boilerplate, inadequate initial responses will result in future FOIA violations, the administrative appeal process and the filing of a lawsuit would not moot that contention. This Court will not deviate from the exhaustion requirement based on Plaintiffs' unfounded concern.[14]

Plaintiffs, in declining to appeal DHS's decision with respect to their request, deprived DHS's Office of General Counsel of a *de novo* review in which it could correct the errors that Plaintiffs claim were prevalent in the initial decision, and explain in further detail why, for instance, the Assessment continues to be withheld. Additionally, if litigation proved to be necessary after an administrative appeal, the appeal decision would give this Court the "benefit of the agency's experience and expertise" with respect to the issues raised in Plaintiffs' complaint. *Wilbur,* 355 F.3d at 677. Accordingly, the Court will follow this Circuit's longstanding principles and dismiss Plaintiffs' claim for failing to exhaust their administrative remedies.

---

[14] In support of this argument, Plaintiffs cite one factually inapposite case in which the D.C. Circuit concluded that "in the specific circumstances of [the] case, the purposes of the exhaustion doctrine would not be serviced by declining to hear [the plaintiff's] claim." *Nat'l Sec. Counselors*, 848 F.3d at 470. That case involved three plaintiffs, two of which had exhausted their administrative remedies with respect to the challenged agency fee policy. *Id*. The Circuit held that those appeals rendered duplicative and inefficient an exhaustion requirement for the third plaintiff regarding the same policy. *Id*. Here, on the other hand, DHS has had no opportunity to consider Plaintiffs' claims in an administrative appeal.

## IV. CONCLUSION

The well-established administrative exhaustion requirement for FOIA actions brought under § 552(a)(6)(A)(i) applies to Plaintiffs' claims regarding DHS's alleged policy-or-practice and its decisions regarding the FOIA request at issue here. Because Plaintiffs failed to meet this requirement, and therefore failed to satisfy an element of each claim, dismissal is appropriate. The Court thus declines to address the merits of Plaintiffs' arguments regarding the substance of DHS's initial response, DHS's alleged unlawful policy-or-practice, its ability to supplement its reasoning after a challenge to its initial response, and its alleged bad faith with respect to its withholding of the Assessment.

For the foregoing reasons, Plaintiffs' motion for leave to file a sur-reply and DHS's motion to dismiss are **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: September 24, 2018               RUDOLPH CONTRERAS
                                        United States District Judge